**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

TONY A. WILSON,

                Plaintiff,

vs.                                    Case No. 3:02-cv-357-J-32MMH

DEPARTMENT OF CHILDREN
AND FAMILIES; et al.,

                Defendants.

_____

**ORDER**[1]

I.    **BACKGROUND**

      This case is before the Court on cross motions for summary judgment,

(Docs. 294, 311-1, 330-1), the parties' responses thereto, (Docs. 312-1, 331-1),

and their extensive submissions in support of and opposition to the motions.

The plaintiff, Tony A. Wilson ("Wilson"), an African-American male, brought the

---

[1]    This is a "written opinion" under § 205(a)(5) of the E-Government Act and therefore is available electronically.  However, it has been entered only to decide the motions addressed herein and is not intended for official publication or to serve as precedent.

present action[2] pursuant to the Civil Rights Act of 1964, 42 U.S.C. § 2000e et.

seq., as amended by the Civil Rights Act of 1991 ("Title VII")(Count II);   42

U.S.C. § 1983 (Counts I, IV, VI, VII, VIII, IX), and pendent claims under the

Florida Civil Rights Act, Fla. Stat. § 760.01 et. seq. (Count III), and the Florida

Constitution, Art. 1, § 9, and § 110.227(5)(a), Fla. Stat. (Count V), alleging

retaliatory termination of employment, retaliatory refusal to hire, and violation of

procedural due process.  He sued his former employer, the Florida Department

of Children and Families ("DCF"), and various co-workers and supervisors: Lucy

Farley ("Farley"), Fannie Green ("Green"), Ann Hendricks ("Hendricks"), William

Day ("Day"), Eddie Gibson ("Gibson"), Pauline Grant ("Grant"), Roger Williams

("Williams"), Theresa Pringle ("Pringle"), Nate Dixon ("Dixon") and Allean Lovett

("Lovett")(collectively referred to as the "individual defendants"), in their personal

and official capacities.[3]  The essence of Wilson's Complaint is that DCF and the

individual defendants unlawfully retaliated against him by discharging him from his job

as a family services counselor with DCF and for not hiring him for several positions

---

[2]     Wilson filed his Complaint on April 11, 2002.  Protracted litigation on a host
of issues followed.  The case now proceeds on Wilson's Consolidated Third
Amended Complaint, (Doc. 142), filed February 18, 2004.  ("Complaint".)

[3]     On April 13, 2005, Plaintiff Wilson moved to voluntarily dismiss three
individual defendants named in the Third Amended Complaint, Eddie Gibson
("Gibson"), Theresa Pringle ("Pringle"), and Pauline Grant ("Grant").  (Doc. 272.)
The three individual defendants were dismissed without prejudice on May 17,
2005.  (Doc. 292.)

at DCF because he complained that a DCF directive that he place four additional paragraphs regarding standard tasks into all of his future case plans was discriminatory against him on the basis of his race.

On previous consideration of Defendants' Motion to Dismiss, the Court, on December 22, 2004, dismissed Wilson's claims brought pursuant to 42 U. S. C. § 1983, and the Florida Constitution seeking monetary damages and equitable relief from DCF, and monetary damages from the individual defendants in their official capacities. (Counts I, IV, V, VI, VII, VIII, IX.)  (Doc. 292.)

The following claims remain: (1) 42 U.S.C. § 1983 claim for violation of 42 U. S. C. § 1981 for retaliatory termination seeking money damages from all of the remaining individual defendants in their personal capacities (Count I); (2) violation of Title VII and of the Florida Civil Rights Act (Fla. Stat. § 760.01 et. seq.) against  DCF for retaliatory discharge, seeking reinstatement, back pay, fees, and removal of letters from his personnel file (Counts II, III);  (3) 42 U.S.C. § 1983 claim for denial of procedural due process seeking money damages from all individual defendants in their personal capacities (Count IV); (4)  42 U.S.C. § 1983 claim for violation of substantive due process against Farley in her personal capacity, seeking monetary damages (Count VI); and (5) 42 U.S.C. § 1983 claim for violation of 42 U.S.C. § 1981 for retaliatory failure to hire, seeking money damages from Hendricks in her personal capacity (Count VIII).

3

## II.   FACTS

In February 2001, Wilson transferred[4] from Clay County to the District 4 Jacksonville office of DCF.  Wilson worked in a family protective investigation unit as a family services counselor, with a job title of child protective investigator.[5]  At all times material, Gibson was Wilson's immediate supervisor, and Green supervised Gibson's unit.  Farley was the District Program Manager, with oversight over all District 4 family safety programs.  (Doc. 294, Ex. 20 and Gibson Aff. ¶¶ 2, 3, 6.)

Gibson and Wilson's protective investigation unit closely interacted with staff attorneys, and was assigned to a legal team of two attorneys.  The lawyers had the authority to make decisions regarding the legal sufficiency of family case plans.  Wilson's unit was assigned to work with attorneys  Day, who is white, and Stacy Hill ("Hill").   Gibson and Wilson did not have the authority or discretion to overrule decisions of the attorneys regarding legal requirements for case plans.  (Doc. 294, Exhibits, Gibson Aff. ¶¶ 4, 5, 8; Doc. 311-2, Wilson dep. at 40.)

A case plan includes a descriptive list of tasks that a parent, relative, or guardian must complete before custody rights to a child are reinstated.  As part of his

---

[4]     Wilson was not happy about the transfer.  Indeed, he told Farley, the district Family Safety Program Director, on February 22, 2001, that he filed a complaint with the DCF Office of Civil Rights.  (Doc. 294, Ex. 21.)

[5]     Wilson became a Florida Career Service Employee on June 16, 2001. (Docs. 142, ¶ 3; 256, ¶ 3.)

job, Wilson functioned as a court worker, and put case plans together pursuant to case plan staff meetings.   Gibson, as Wilson's supervisor, was charged with making sure the unit's case plans conformed to the legal requirements set forth by the staff attorneys.  The case plans were also reviewed by the assigned staff attorneys.  (Doc. 294, Exhibits, Gibson Aff. ¶¶ 4, 5, 6.)

Issues relating to the omission of items by Wilson in his case plans developed during the late summer and early fall of 2001.   It "started off" in September when Day told Wilson to correct errors in his case plans.  (Doc. 311-2, Wilson dep. at 43; <u>see</u> Doc. 304-2, Day 11/09/01 statement.)  On September 10, 2001, Wilson sent an e-mail to Gibson complaining that "Day and others" were using work procedures, specifically the case plan requirements, to "single out" and discriminate against Wilson, and that the "discrimination and retaliation" has been "ongoing since Mr. Wilson's arrival on or about February 26, 2001."  (Doc. 304-28.)  The e-mail did not mention race.

Matters came to a head when staff attorneys Day and Hill approved and required the addition of four paragraphs to be included in all case plans submitted to the legal department by Wilson's unit.  (Doc. 294, Exhibits, Gibson Aff. ¶¶ 7, 11; Doc. 303-8.)  Wilson's supervisor, Gibson, informed Wilson of the new requirement by e-mail on October 5, 2001.   (Doc. 303-8.)[6]   Wilson

---

6     A draft of the four paragraphs at issue are:
      1.      The  [blank]  will provide the names, dates of birth and any
              other relevant information on all adults residing in the home of

complained about being required to place the four additional paragraphs in the case plans because other units were not required to include them, and complained that Day treated him unfairly and was discriminating against him. (Doc. 294, Exhibits, Gibson Aff. ¶¶ 9, 10; Doc. 331, Ex. 3, Wilson Aff. ¶ 9; Doc. 331, Ex. 9.)  Wilson said he told Gibson's supervisor, defendant Green, that Day was discriminating against him by directing additional case plan requirements.  (Doc. 331, Ex. 9; Doc. 294, Exhibits, Gibson Aff. ¶¶ 108, 109.)

On November 4, 2001, Wilson's supervisor Gibson reviewed several case plans submitted by Wilson for approval.  Gibson noted that Wilson's case plans did not include the new task language - the four paragraphs that Wilson had been instructed to include, but did add a page listing more than 12 "Additional

---

the  [blank] .

2.   The  [blank]  will advise the Department of Children and Families of any change of residence as well as the physical address of such new residence within 72 hours of said change of residence.

3.   The  [blank]  will sign an authorization for release of information to the Department of Children and Families when requested by the counselor so that relevant information may be obtained to verify compliance with said case plan, amount (sic) other things.

4.   The  [blank]  will not knowing (sic) reside with any person with a history of domestic and/or physical abuse.  (Doc. 303-8.)

Wilson acknowledged that after typing the four paragraphs into his template, they could be "cut and pasted" by computer into subsequent case plans.  (Doc. 311-2, Wilson dep. at 53-54.)

Tasks" not required in Duval County case plans.  Gibson did not approve the case plans, and returned them to Wilson with a note to include the required language as directed.  (Doc. 294, Exhibits, Gibson Aff. ¶ 12; Doc. 331, Ex. 3, Wilson Aff. ¶ 15; Doc. 311-2, Wilson dep. at 45-46, 182; Doc. 304-2, Day 11/09/01 statement.)

On November 6, 2001, while Gibson was meeting with a member of his unit staff, Wilson entered Gibson's office unannounced, and angrily sat next to the staff member in conference.  (Doc. 294, Ex. 8.)  According to Gibson, Wilson was irate and asked Gibson why "'games'" were being played with the case plans.  Wilson told Gibson that the required language was in the attachment to his case plans, and left Gibson's office.  (Doc. 294, Exhibits, Gibson Aff. ¶ 13; Doc. 304-2, Gibson 11/09/01 statement.)  Wilson's demeanor was described as irate, rude and aggressive.  (Doc. 304-2 and Gibson 11/09/01 statement.)

Gibson then conferred with the assigned staff attorneys, Day and Hill, who determined that Wilson's case plans were legally deficient because the required four tasks needed to be in the main body of the case plan, and also because Wilson's "Additional Tasks" attachment contained unacceptable language. (Doc. 294, Exhibits, Gibson Aff. ¶ 14.)

Wilson returned to Gibson's office and was angry the changes were required in his case plans.  He refused his supervisor's request to come to the

7

legal department to discuss the case plan requirements with the staff attorneys, and threateningly pointed his finger at Gibson.  (Doc. 294, Exhibits, Gibson Aff. ¶ 15; Doc. 304-2 and Gibson 11/09/01 statement.)

Wilson went to Day's office that afternoon, irate and confrontational about the directive to add four paragraphs to his case plans. Again, Wilson interrupted a conference in progress. (Doc. 294, Ex. 9.)  Wilson asked Day why the case plans were being "changed" again, and criticized Day for being "inconsistent" because nonconforming case plans had been approved in the past.  (Doc. 294 Ex. 9; Doc. 304-2, Day's 11/09/01 statement.)  Wilson talked to Day about Day's "discriminatory practices," and told Day he was going to report the problem to Day's supervisor, Hendricks.  (Doc. 311-2, Wilson dep. at 41,  47.)  Day attempted to explain the necessity for the additional paragraphs in the case plans.  Wilson refused Day's request to meet with Day and Gibson to discuss the issues upsetting Wilson.  (Doc. 304-2.)  Wilson charges that Day stated:"I am getting tried (sic) of your black ass."  (Doc. 294, Ex. 9; Doc. 311-2, Wilson dep. at 44, 56.)[7]

Wilson then went to the office of Ann Hendricks., who was Day's supervisor in the legal department.  Again, Wilson's demeanor was described

---

[7]    The alleged derogatory statement first appears in any writing in Wilson's December 21, 2001 Proposed Disciplinary Action Reply. (Doc. 294, Ex. 9.)

as rude, irate, hostile and confrontational, and threatening to Day when he entered the office.  At that meeting, Wilson told Day that he was a racist and announced he was going to file a racial discrimination claim against Day. (Doc. 304-2; Doc. 294, Ex. 9; Doc. 304-2, Hendricks 11/12/01 statement, Day 11/09/01 statement.)

Wilson corrected the questioned case plans that afternoon.  (311-2, Wilson dep. at 46; Doc. 294, Exhibits, Gibson Aff. ¶ 16.)  Wilson acknowledged that he "confronted" Day about the change in the case plans.  (Doc. 311-2, Wilson dep. at 42.)  He denies he raised his voice, saying his tone and demeanor was appropriate for one talking about being discriminated against.  "I don't think making a point is being out of control."  (Doc. 311-2, Wilson dep. at 47-48.)[8]

Wilson said that he sent an "initial charge" by mail to the Equal Employment Opportunity Commission ("EEOC") and to the DCF Office of Civil Rights ("OCR") on November 6, 2001.  (Doc. 331-2, Wilson dep. at 65; Doc. 331 Ex. 3, Wilson Aff. ¶ 26.)  However, the EEOC does not have a copy of the November 6 letter, and no party has a produced a copy. (Doc. 331, Ex. 3, Wilson Aff. ¶30; Doc. 311-2, Wilson dep. at 253-

---

[8]    What is material to Wilson's various claims is the DCF officials' consistent perception of Wilson's behavior, which ultimately formed the basis for his dismissal.  (See Doc. 304-2.)

9

54.) [9]

On November 7, 2001, at 7:16 a.m., Wilson informed Gibson and Hendricks by e-mail that he had forwarded a complaint against Day "for Disparate Treatment Discrimination" to the EEOC and the DCF OCR charging that Day "has created a hostile working environment by using his job to discriminate against me." (Doc. 294, Ex. 7; Doc. 304-2 attachment.)  The e-mail was forwarded later that day by Hendricks to her supervisor, defendant Williams, who was district legal counsel. (Id.; Doc. 318, Williams dep. at 13.)    Williams responded to Hendricks that afternoon:

> I spoke to Dekle [Day] earlier and asked him to document. Teresa Pringle should be sent a copy of the documentation from both of you.  Lucy [Farley] just stepped in and we will be moving for dismissal. (Id.)

Williams and Farley requested that Gibson, Day and Hendricks submit statements setting forth the events of November 6, 2001.  (Doc. 315, Gibson dep. at 9.)

---

[9]    The EEOC apparently did receive some kind of "correspondence" from Wilson in the fall of 2001, but it was not a formal charge.  The Commission responded that it needed additional information in order to determine whether his situation was covered by the statutes the EEOC enforces.  (Doc. 329-1, 2.)
The DCF OCR did receive Wilson's November 6 letter and responded to Wilson on November 13 that it was unable to determine the facts and allegations supporting his complaint.  The letter alleges that Day was "using his job" and "work procedures" to "single out" Wilson and "discriminate" against him by requesting a change in the case plans "once again."  The letter to OCR does not allege discrimination on the basis of Wilson's race. The OCR requested that Wilson complete a complaint form, and Wilson never complied.  The OCR closed the complaint file on November 28, 2001.  (Doc. 294, Ex. 44; Doc. 311-6, Dudley Aff. ¶¶ 8-11.)

Wilson met with his supervisor Gibson on November 7.  Gibson told Wilson that he and attorney Day had in October signed off on case plans that did not include the proper language and the "additional tasks" for purposes of expediency to meet court filing deadlines, to be amended after filing.  (Doc. 294, Exhibits, Gibson Aff. ¶¶ 16, 17.)  Wilson told Gibson that he had filed a complaint with the EEOC and with the DCF OCR.  (Doc. 311-2, Wilson dep. at 173.)

Wilson charges that on November 8, 2001, Day confronted Wilson in the courtroom in a threatening manner.  Wilson told Gibson that he would report all "retaliation."  (Doc. 314-8; Doc. 294, Exs. 9, 25.)

The next day, Wilson sent an e-mail to Gibson stating that there were no written warnings or complaints in his personnel file, and that he was "concerned" that "there may be retaliation" because he had "filed a complaint" with the OCR and EEOC against Day.  (Doc. 314-13.)[10]

After November 6, 2001, it came to light that Wilson had missed several scheduled court dates.  (Doc. 294, Exhibits, Gibson Aff. ¶ 20; Doc. 304-2 at 3.) Specifically, Wilson failed to appear at two disposition hearings in court on November

---

[10]    On November 13 and 14, 2001, Wilson forwarded to defendants Green, Lovett, Dixon and Farley his November 9 e-mail announcement that he had on November 6 "forwarded a complaint" about Day to the EEOC and the DCF OCR, and various other e-mails concerning the dispute.  (Doc. 294, Exs. 24-26.)  Dixon served as the DCF equal employment opportunity coordinator; Lovett worked as senior personnel manager (Doc. 294, Dixon dep. at 4, Lovett dep. at 4.)

11

9, and missed an adjudicatory court hearing on November 12.  (Doc. 304-2 and Day 11/09/01 statement.)  Wilson said he did not intentionally miss the court proceedings.  (Doc. 331, Ex. 3 Wilson Aff. ¶¶ 87-90, 93, 98; Doc. 294, Ex. 9.)

An investigatory conference was conducted on November 15, 2001 by Green and Gibson at which Wilson was asked to explain what happened on November 6 regarding the case plans.[11]  Wilson was informed orally of the specific charges against him, including the charge of conduct unbecoming a public employee, which was punishable by dismissal.  (Doc. 315, Gibson dep. at 10, 17-18; Doc. 316, Green dep. at 19; Doc. 311-2, Wilson dep. at 36-37.)  Wilson's request to submit a written response instead of orally discussing the situation was granted, and on November 16, Wilson responded with an e-mail stating that he had "formally" (verbally) filed a discrimination complaint against Day with Day's supervisor, Hendricks.  Wilson provided no further explanation, saying "the only thing that occurred on November 6, 2001 at approximately 4:40 pm was Mr. Wilson complaining of Mr. Day's discrimination against him."  (Doc.

---

[11]    Defendant Lovett, DCF human resource manager, explained on November 14 to Wilson that the investigatory conference was to investigate what occurred on November 6, and to afford Wilson the opportunity to respond.  If any formal action were taken as a result of the incident, Wilson would have every opportunity to review and respond to all charges as well as supporting documentation.  (Doc. 294, Ex. 23.)  Wilson complained that he was not given "specific" charges prior to the conference, but it is undisputed that he knew that the events of November 6 were to be discussed.  (Doc. 294, Exs. 22, 45.)

304-2 at 3 and Wilson 11/16/01 e-mail; Doc. 294, Ex. 9.)

On December 18, 2001, defendant Farley, through her designee, signed a predetermination letter giving notice to Wilson of the DCF's proposed disciplinary action of dismissal.  The letter listed three charges: 1) conduct unbecoming a public employee, 2) insubordination and 3) disruptive conduct. (Doc. 304-2.)[12]  The letter outlined the conduct giving rise to the charges, specifying Wilson's confrontational, argumentative, rude, aggressive and even threatening conduct on November 6, 2001, and his failure to appear at required court hearings.  Attached were the written statements by Gibson, Hendricks and Day.  (Doc. 304-2 attachments.)  The letter informed Wilson that in accordance with Florida career service rules, he could request a predetermination conference to refute or explain the charges, which, if requested, would be held on December 27, 2001.  Wilson did not request or attend the predetermination conference.  (Doc. 304-3.)  Instead, he requested that his written statements, including his Proposed Disciplinary Action Reply, dated December 21, 2001, be accepted in lieu of his appearance.    (Doc. 304-5, Wilson 12/24/01 predetermination reply supplement; Doc. 304-7; Doc. 294 Ex. 4.)

---

[12]     In accordance with the DCF Employee Handbook, first occurrence conduct unbecoming of a public employee is punishable by written reprimand to dismissal; insubordination is punishable by written reprimand to a five-day suspension; and disruptive conduct is punishable by reprimand.  (Doc. 294, Exhibit.)

On February 11, 2002,  DCF dismissed Wilson for conduct unbecoming a public employee, insubordination, and disruptive conduct. Farley signed a letter of dismissal for the same three charges and the bases set forth in the December 18 predetermination letter.  (Doc. 302-3.)

Wilson appealed his dismissal to the Florida Public Employees Relations Commission ("PERC"), but he did not appear at the PERC hearing scheduled in his case because he "decided to abandon that avenue." The Commission ruled in DCF's favor, determining that its dismissal of Wilson was for just cause.  Wilson did not appeal the PERC decision to the Florida courts, though he was aware he could. (Doc. 311-2, Wilson dep. at 66-69.)[13]  He filed his initial complaint in this case on April 11, 2002.  (Doc. 1.)

In August, 2003, Wilson submitted an application for a position with DCF of staff attorney, for which defendant Hendricks was the selecting supervisor.    The advertisement for the position stated that preference would be given to applicants that were already members of the Florida Bar.  Prior to reviewing any applications for the position, and before knowing who the applicants were, Hendricks made the determination that she would not consider any applicant who was not a member of the

---

[13]    On April 1, 2002, Wilson filed a charge with the EEOC, complaining that the DCF discriminated and retaliated against him on February 11, 2002 when it dismissed him from his job.  (Doc. 294, Ex. 49.)  On April 19, 2002, the EEOC dismissed Wilson's charge on the basis that the facts alleged failed to state a claim under any of the statutes enforced by the EEOC.  (Doc. 294, Ex. 50.)

14

Bar, unless there were no qualified applicants who were.   According to Wilson's application, he was not a member of the Florida Bar at the time.[14]  The final selection for the position was made from applicants who were members of the Bar, and was not, according to Hendricks, motivated in any way by the fact that Wilson had filed the instant lawsuit.  Wilson provided no evidence that he was more qualified than the person ultimately selected for the position.  (Doc. 311-2 , Wilson dep. at 150-52, 154; Doc. 311-6, Hendricks aff.)

The crux of the allegations remaining in Wilson's complaint is that DCF and the individual defendants retaliated against him  for complaining that Day discriminated against him, 1) by failing to investigate the charges against Wilson and participating in Wilson's dismissal for conduct unbecoming a public employee, insubordination, and disruptive conduct; 2) by not investigating his complaint of discrimination against Day; and 3) by not re-hiring Wilson as a lawyer.  (Doc. 142; Doc. 311-2, Wilson dep. at 97-98, 101-03, 107-10, 116-17, 119, 121-23, 127-29, 145-46, 150, 238.)

## III.   **DISCUSSION**

The defendants have filed the present motion for summary judgment asserting the following arguments: 1) Wilson cannot establish a prima facie case

---

[14]      Wilson has completed law school.  Though he took and passed the Bar exam, Wilson was still not a member of The Florida Bar as of April 25, 2005, the date of his deposition.  (Doc. 311-2, Wilson dep. at 151.)

of retaliation; 2) Wilson was afforded procedural due process to protect any property or liberty interest he has asserted; and 3) the individual defendants are entitled to qualified immunity.  (Doc.  311-1.)  Plaintiff Wilson counters in his motion for summary judgment that the direct and circumstantial evidence support his claim of retaliation, and that procedures were inadequate to protect his liberty interest.  (Doc. 294.)

### A.   Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The stringent burden of establishing the absence of material fact lies with the moving party.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)

"By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)(emphasis in original).   An issue is "material" if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case.  Anderson, 477 U.S. at 248; Allen v. Tyson Foods, Inc.,

16

121 F.3d 642, 646 (11ᵗʰ Cir. 1997).  An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  <u>Anderson</u>, 477 U.S. at 248; <u>Allen</u>, 121 F.3d at 646; <u>Mize v. Jefferson City Bd. of Educ.</u>, 93 F.3d 739, 742 (11ᵗʰ Cir. 1996).  Where there is a "complete failure of proof concerning an essential element of the nonmoving party's case," all other facts presented by that party are rendered immaterial.  <u>Celotex Corp.</u>, 477 U.S. at 323.

On motion for summary judgement, the Court must view all of the evidence and all factual inferences drawn therefrom in the light most favorable to the non-moving party, and determine whether that evidence could reasonably sustain a jury verdict.  <u>Celotex Corp.</u>, 477 U.S. at 322-23; <u>Allen</u>, 121 F.3d at 646.

While the burden on the movant is great, the non-moving party has a duty to present affirmative evidence in order to defeat a properly supported motion for summary judgment.  <u>Anderson</u>, 477 U.S. at 252.  A mere "scintilla" of evidence in favor of the non-moving party, or evidence that is "merely colorable" or "not significantly probative" is not enough.  <u>Id.</u> at 249-50, 252; <u>see also</u> <u>Mayfield v. Patterson Pump Co.</u>, 101 F.3d 1371, 1376 (11ᵗʰ Cir. 1996)(conclusory allegations and conjecture cannot be the basis for denying summary judgment); <u>Avirgan v. Hull</u>, 932 F.2d 1572, 1577 (11ᵗʰ Cir. 1991)("[t]he

evidence presented cannot consist of conclusory allegations or legal conclusions").

**B.    Retaliation Claims (Counts I, II, III and VIII)**

**1.    Title VII Retaliatory Discharge Claim (Count II)**

Wilson alleges in Count II of his Complaint that DCF discharged him in retaliation for his complaining that Day discriminated against him, in violation of 42 U.S.C. § 2000e et. seq.  (Doc. 142, ¶¶ 28-55.)

Title VII prohibits retaliation in the employment arena:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42. U.S.C. § 2000e-3(a).  To establish a *prima facie* case of retaliation under Title VII, a plaintiff must demonstrate: (1) that he engaged in statutorily protected activity or expression; (2) that he suffered an adverse employment action; and (3) that the adverse employment action was causally related to the protected activity.  E.g., Harper v. Blockbuster Entertainment Corp., 139 F.3d 1385, 1388 (11th Cir. 1998).[15]  Once a plaintiff satisfies the elements of a *prima*

---

[15]    The burden of proof in Title VII retaliation cases is governed by the framework established in McDonnell Douglas v. Green, 411 U.S. 792 (1973). Hairston v. Gainesville Sun Pub. Co., 9 F.3d 913, 919 (11th Cir. 1993)."

*facie* case, the burden shifts to the defendant to rebut the presumption of retaliation by offering evidence of a legitimate, nonretaliatory reason for the adverse action.  Hairston v. Gainesville Sun Pub. Co., 9 F.3d 913, 919 (11th Cir. 1993).   After the presumption is eliminated, the burden shifts back to the plaintiff, who then must raise a material fact as to whether defendant's reason is pretextual.   Id. at 920-921. See also Jackson v. State of Alabama State Tenure Comm'n, 405 F.3d 1276, 1289 (11th Cir. 2005).

On this record, Wilson has failed to adduce any evidence or proof in support of the first element of his Title VII retaliation claim, that he engaged in a statutorily protected activity or expression.

To establish he engaged in an activity protected by Title VII, a plaintiff need not prove the underlying claim of discrimination which led to his protest so long as he can establish that he had a reasonable good-faith belief that discrimination existed.  Gupta v. Florida Bd. of Regents, 212 F.3d 571, 586 (11th Cir. 2000).  "A plaintiff engages in 'statutorily protected activity' when he or she protests an employer's conduct which is actually lawful, so long as he or she demonstrates 'a good faith, reasonable belief that the employer was engaged in unlawful employment practices.'"  Harper, 139 F.3d at 1388 (quoting Little v. United Technologies, Carrier Transicold Div., 103 F.3d 956, 960 (11th Cir. 1997)).  "However, it is insufficient for a plaintiff 'to alleged his belief in this

19

regard was honest and bona fide; the allegations and record must also indicate that the belief, though perhaps mistaken, was objectively reasonable.'" Harper, 139 F.3d at 1388 (quoting Little, 103 F.3d at 960).  Wilson need not prove the merits of his underlying complaint of discrimination, but he must demonstrate "a good faith reasonable belief" that DCF was engaged in some unlawful employment practices.  Little, 103 F.3d at 960.  To do so, Wilson must prove both (1) that he had a subjective good-faith belief that DCF engaged in an unlawful employment practice and (2) that his belief was objectively reasonable as measured against existing substantive law.  Id.; Clover v. Total Sys. Servs., Inc., 176 F.3d 1346, 1351 (11th Cir. 1999); Tatt v. Atlanta Gas Light Co.,138 Fed. Appx. 145, 147 (11th Cir. 2005).[16]

---

[16]     Wilson argues that his case should be analyzed under the so-called "participation" clause of Title VII,  because he made a "charge" of discrimination to the EEOC and the DCR OCR.  Wilson contends that protection from retaliation under the participation clause is not conditioned by a good faith reasonable basis requirement.  (E.g. Doc. 294 at 5.)   Whether or not Wilson's argument is correct  is apparently unsettled.  See Soto v. Bank of America, NA, No. 6:04-CV-782-ORL28JGG, 2005 WL 2861116, at *10 n.5 (M.D. Fla. Nov. 1, 2005).  Even so, Wilson's "correspondence" with the EEOC and the DCF OCR loosely complaining about "discrimination", and e-mail complaints and face to face confrontations with supervisors and co-workers, while relevant to a claim of unlawful retaliation, Pipkins v. City of Temple Terrace, 267 F.3d 1197, 1201 (11th Cir. 2001), do not constitute charging, testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing under Title VII, as contemplated by the "participation" clause.  42. U.S.C. § 2000e-3(a).  See Anduze v. Florida Atlantic University, No. 04-16198, 2005 WL 2402738, at * 2 (11th Cir. Sept. 29, 2005); E.E.O.C. Total System Services, Inc., 221 F.3d 1171 1174 & n.2 and 3 (11th Cir. 2000); Clover v. Total Systems Services, Inc., 176 F.3d 1346, 1351-53 (11th Cir.

Wilson alleges that Day "discriminated" against him, and that he complained about this alleged discrimination to the EEOC, the DFC OCR, and to his supervisors, and DCF human resources and legal personnel, as well as to the district director.  The basis for Wilson's charge of racial discrimination was that 1) Day approved a directive requiring Wilson to include certain entries in the department's family case plan; and 2) that Day made a single racially derogatory remark to him.  (See 311-2, Wilson dep. at 96.)

The record does not contain evidence sufficient for a reasonable jury to find that Wilson's belief that DCF had unlawfully discriminated against him during his employment was objectively reasonable.  First, Day's requiring Wilson (through Wilson's supervisor Gibson's directive) to follow a particular format when compiling his  DCF case plans - adding a template of four paragraphs which could be cut and pasted by computer from plan to plan in a matter of moments - is hardly the stuff of racial discrimination or hostile work environment.[17]  Nor is the allegation, which we must accept as true for summary

_____

1999); Coutu v. Martin County Bd. of County Comm'rs, 47 F.3d 1068, 1074 (11th Cir. 1995).  Accordingly, the Court will analyze Wilson's claim under the "opposition" clause, making relevant the question of whether Wilson's belief that DCF had, through its employee Day, discriminated against him on the basis of race was in reasonable good faith. See Harper, 139 F.3d at 1388; Little, 103 F.3d at 960.

[17]     "A hostile work environment claim under Title VII is established upon proof that 'the workplace is permeated with discriminatory intimidation, ridicule, and

judgment purposes, that Day made a single racially derogatory remark a basis for bringing a charge of discrimination.[18] Day's own individual act of discrimination does not fall within the protection of Title VII. <u>Little</u>, 103 F.3d at 959.[19] Wilson's unsubstantiated assertions of alleged differential treatment based on race, without supportive evidence, is insufficient to create a genuine issue of material fact that his charge of discrimination based upon race was objectively reasonable. <u>See</u> <u>Little</u>, 103 F.3d at 960.

Furthermore, even assuming Wilson proffered a *prima facie* case for retaliation, DCF articulated a legitimate, non-discriminatory reason - insubordination, disruptive conduct, and conduct unbecoming a public employee - for dismissing him. Wilson failed to proffer sufficient evidence to create a

---

insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" <u>Miller v. Kenworth of Dothan, Inc.</u>, 277 F.3d 1269, 1275 (11th Cir. 2002)(quoting <u>Harris v. Forklift Systems, Inc.</u>, 510 U.S. 17, 21 (1993)); <u>Cooley v. Great Southern Wood Preserving</u>, 138 Fed. Appx. 149, 154 (11th Cir. 2005). Wilson has failed to allege or establish with any evidence that DCF's conduct through its employees was physically threatening or humiliating, or that it interfered with his job performance. <u>See</u> <u>Cooley</u>, 138 Fed. Appx. at 154-55 (citing <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 788 (1998)).

[18] Day was not deposed and his affidavit is silent on this issue; thus we do not know whether Day denies making this statement.

[19] <u>See generally</u> <u>Faragher</u>, 524 U.S. at 788 (a single isolated comment or incident, unless extremely serious, will not amount to discriminatory changes in the "'terms and conditions of employment'").

genuine issue of material fact to show that DCF's reasons for the employment action were pretextual.

"In order to show pretext, the plaintiff must 'demonstrate that the proffered reason was not the true reason for the employment decision... . '"<u>Jackson</u>, 405 F.3d at 1289 (citing <u>Texas Dept. of Cmty. Affairs</u>, 450 U.S. 248, 256 (1981)). In evaluating a summary judgment motion on the question of pretext, "'[t]he district court must evaluate whether the plaintiff has demonstrated such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'" <u>Jackson</u> 405 F.3d at 1289 (citation omitted).

Here, the DCF officials unanimously perceived Wilson's conduct as hostile, rude, confrontational, and even threatening to his supervisors and co-workers over something so inconsequential as adding four paragraphs to family case plans as unacceptable conduct, and a legitimate basis for his termination from employment. The DCF Employee Handbook provides that Conduct Unbecoming a Public Employee, defined as "[c]onduct, whether on or off the job, that adversely affects the employee's ability to continue to perform his current job, or which adversely affects the department's ability to carry out its assigned mission," is punishable by dismissal even on the first occurrence.

23

(Doc. 294 exhibits.)  See Clark v. Alabama, 141 Fed. Appx. 777, 787 (11th Cir. 2005)(at least some of the conduct for which plaintiff was disciplined was in the state's written policies and procedures); Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 1187 (11th Cir. 1984)("Title VII does not take away an employer's right to interpret its rules as it chooses, and to make determinations as it sees fit under those rules").  Disruptive, antagonistic "conduct , even when associated with complaints of discrimination, has been held to fall outside the protection of [42 U.S.C. § 2000e-3(a)][Title VII] and to provide the employer with a legitimate basis for its action.'" Jackson, 405 F.3d at 1290 (citations omitted); see also Rollins v. State of Fla. Dept. of Law Enforcement, 868 F.2d 397, 401 (11th Cir. 1989)(to qualify for protection under Title VII, the manner in which an employee expresses his opposition to the allegedly discriminatory employment practice must be reasonable).   DCF's conclusion that Wilson's accusations, aggressive conduct and refusal to follow orders relating to family case management plans, undermined his ability to continue to perform his job as family services counselor and the DCF's important mission of protecting children and implementing case plans to that end, is plausible and worthy of credence.  Wilson's conclusory allegations, assertions and opinion  that his termination was in retaliation for his complaining about Day's alleged discriminatory conduct, do not suffice to rebut the legitimate

24

nondiscriminatory reason proffered by DCF, and to establish pretext.  See Mayfield v Patterson Pump Co., 101 F.3d 1371, 1376 (11th Cir. 1996); see also Whatley v. Metropolitan Atlanta  Rapid Transit Auth., 632 F.2d 1325, 1329 (5th Cir. Unit B, 1980)(hostile and accusatory complaints of discriminatory practices, lack of cooperation within his office, failure to follow established reporting procedures, and refusal to follow instructions from his supervisor constituted legitimate reason for discharge).[20]  DCF is entitled to summary judgment on Count II of the Third Amended Complaint, Wilson's Title VII retaliation claim.

### 2.    Florida Civil Rights Act Retaliatory Discharge Claim (Count III)

In Count III of his Complaint, Wilson alleges that DCF violated the Florida Civil Rights Act, Fla. Stat. § 760.01 et. seq. by discharging him in retaliation for his complaints about discrimination.  (Doc. 142, ¶¶ 56-59.)  Count III of the Complaint mirrors the allegations in Count II, alleging retaliatory discharge in violation of Title VII, and indeed, incorporates the allegations of Count II.  (Doc. 142, ¶ 59.)

The decisions construing Title VII guide the analysis of claims under the Florida Civil Rights Act.  Harper, 139 F.3d at 1389; Castleberry v. Edward M.

---

[20]    In Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1207 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

Chadbourne, Inc., 810 So.2d 1028, 1030 n.3 (Fla. 1st DCA 2002).  Because

Wilson failed to adduce any evidence in the record establishing a genuine issue

of material fact supporting his retaliation claim under Title VII, his Florida Civil

Rights Act retaliatory discharge claim also fails to survive.  See Harper, 139

F.3d at 1389-90.  DCF is entitled to summary judgment on Count II of the Third

Amended Complaint, Wilson's Title VII retaliation claim.

### 3.    Section 1981 Retaliatory Discharge Claim (Count I)

Wilson brings Count I of his Complaint against the individual defendants

in their personal capacities, pursuant to 42 U.S.C. § 1983,[21] alleging that the

individual defendants violated 42 U.S.C. § 1981 for their respective roles in his

termination from his job with DCF in retaliation for complaining about

discrimination.  (Doc. 142, ¶¶ 1-27.)[22]

---

[21]    Section 1983 "'provides the exclusive federal damages remedy for the
violation of the rights guaranteed by § 1981 when the claim is pressed against a
state actor.'" St. Louis v. Sands, No. 05-21320, 2005 WL 3099773, at *5 (S.D. Fla.
2005)(citing Vason v. City of Montgomery, 240 F.3d 905 (11th Cir. 2001)(citing Jett
v. Dallas Ind. School Dist., 491 U.S. 701, 735 (1989))).  See also Butts v. County
of Volusia, 222 F.3d 891, 892 (11th Cir. 2000).

[22]    The Eleventh Circuit has held that 42 U.S.C. § 1981 supports a retaliation
cause of action based upon a complaint of racial discrimination.  Webster v. Fulton
County, Ga., 283 F.3d 1254, 1257 & n.6 (11th Cir. 2002); Little, 103 F.3d at 961.
To the extent that the elements of Title VII and § 1981 claims are the same, see
Bass v. Bd. of County Comm'rs, 256 F.3d 1095, 1120 n. 10 (11th Cir. 2001);
Palmer v. Stewart County School Dist., No. 4:04-cv-21 (CDL), 2005 WL 1676701,
at *11 (M.D. Ga. June 17, 2005), defendants are entitled to summary judgment on
Count I of the Complaint, for the same reasons as pertained to Count II.

Construing Wilson's Section 1983 claim as a First Amendment claim, it is settled that a state may not demote or discharge an employee in retaliation for protected speech. Watkins v. Bowden, 105 F.3d 1344, 1354 (11th Cir. 1997); Ratcliff v. DeKalb County, Ga., 62 F.3d 338, 340 (11th Cir. 1995).  To prove a Section 1981 retaliation claim cognizable under the First Amendment, a plaintiff must show that (1) his speech was on a matter of public concern; (2) his First Amendment interest in engaging in the speech outweighed the employer's interest in prohibiting the speech; and (3) his speech played a "substantial part" in the employer's decision to discharge him. Anderson v. Burke County, 239 F.3d 1216, 1219 (11th Cir. 2001); Watkins, 105 F.3d at 1353.  If the employee succeeds in establishing the foregoing, then the burden shifts to the employer to show by the preponderance of the evidence that (4) "'it would have reached the same decision . . . even in the absence of the protected conduct.'" Anderson, 239 F.3d at 1219 (citation omitted).  The first two factors are questions of law designed to determine whether the First Amendment protects the employee's speech; the second two questions are questions of fact whether the alleged adverse employment action was in retaliation for the protected speech. Id. at 1219-20.  Wilson fails as a matter of law to make any showing sufficient to establish the threshold question of whether his complaints about his employment situation may be fairly characterized as constituting speech on a

matter of public concern and thus protected by the First Amendment.

"For an employee's speech to rise to a matter of public concern, it must relate to a matter of political, social, or other concern to the community." Watkins, 105 F.3d at 1353.   Absent extraordinary circumstances, First Amendment protection is unavailable when "a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest." Connick v. Myers, 461 U.S. 138, 147 (1983). If only of purely personal concern, the speech is not protected by the First Amendment.   Badia v. City of Miami, 133 F.3d 1443, 1445 (11th Cir. 1998). Speech "which exposes personally discovered discrimination for personal benefit" and seeks a remedy for that personal harm is not entitled to First Amendment protection.   Badia, 133 F.3d at 1445.   Thus, complaints lodged privately and informally, and complaints about how work colleagues behaved toward the employee and how that conduct affected the employee's performance do not constitute speech on a matter of public concern. Watkins, 105 F.3d at 1353; Morgan v. Ford, 6 F.3d 750, 755 (11th Cir. 1993).

It is undisputed that Wilson's complaints about Day and requests for relief were solely personal to him, and driven by his own self- interest in improving the conditions of his employment.   Because Wilson fails to establish that there exists a genuine issue of material fact that his speech concerned matters of

public concern as opposed to a private employee grievance to further his own private interests, the individual defendants, in their personal capacities, are entitled to summary judgment on Count I of the Complaint.

### 4.    Section 1981 Retaliatory Failure to Hire Claim (Count VIII)

In Count VIII of the Complaint, brought pursuant to 42 U.S.C. § 1983, Wilson alleges that defendant Hendricks' refusal to hire him for an attorney position with DCF was in retaliation for his filing the instant lawsuit alleging retaliation, in violation of 42 U.S.C. § 1981.[23]  (Doc. 142, ¶¶ 161-170.)

Under a First Amendment analysis, the threshold question of whether Wilson's filing of this lawsuit constituted protected speech on a matter of public concern as opposed to pursuit of a private remedy, the law in this Circuit is unsettled.  Badia, 133 F.3d at 1445-46;  Henry v. City of Tallahassee,  149 F. Supp.2d 1324, 1328 (N.D. Fla. 2001).  However, in light of the fact that Wilson's Complaint discusses only harm that he personally suffered and seeks damages only to remedy that personal harm, it is subject to the rule that "[g]enerally, such speech which exposes personally discovered discrimination for personal benefit

_____

[23]    The instant lawsuit alleges retaliation as opposed to racial discrimination. Compare Webster, 283 F.3d at 1257 & n.6.  To the extent alleged racial discrimination is implicated by Wilson's complaint, there is no genuine issue as to any material fact that Wilson was, or could reasonably believe, that defendants discriminated against him on the basis of race, as set forth above.  Thus, his Section 1981 claim of retaliation for failure to hire fails as would a Title VII claim. See Bass, 256 F.3d at 1120 n. 10; Palmer, 2005 WL 1676701, at *11.

is not entitled to First Amendment protection."  <u>Badia</u>, 133 F.3d at 1445.  As such, the Court agrees with the holding in <u>Henry</u>, <u>supra</u>, that "when - in the context of a single-plaintiff EEOC charge or court complaint - an employee complains that he was the victim of discrimination and/or retaliation and does so for personal benefit, the main thrust of such speech will rarely, if ever, qualify as speech on a matter of 'public concern.'" <u>Henry</u>, 149 F. Supp.2d at 1328. Inasmuch as Wilson's claims in this lawsuit are purely personal, and in no way can be construed as expressing a matter of  "public concern," Wilson's filing of this lawsuit is not, as a matter of law, an expression of speech protected by the First Amendment for purposes of the retaliatory failure to hire claim.

Even assuming that Wilson's filing of this lawsuit is protected speech in this retaliation context, he has proffered no evidence to create a genuine issue of material fact disputing Hendricks' sworn statement that Wilson did not make the first cut for consideration for the attorney job opening because she only considered applicants who were members in good standing of The Florida Bar, a totally nonretaliatory reason.   Again, Wilson's opinion and conclusory allegations that Hendricks retaliated against him do not suffice to create a genuine issue of material fact concerning whether his filing the instant lawsuit played a "substantial part" in Hendricks' decision not to recommend him for the job.  Accordingly, Hendricks, in her personal capacity, is entitled to summary

judgment on Wilson's Section 1983 claim of retaliation in violation of section 1981, Count XIII of the Third Amended Complaint.

### C.   Procedural Due Process (Count IV)

In Count IV of the Complaint, brought pursuant to 42 U.S.C. § 1983, Wilson alleges that the individual defendants deprived him of his job, a protected property interest, without procedural due process.  He seeks money damages from the individual defendants in their personal capacities.  (Doc. 142, ¶¶ 60-117.)  He alleges that the November 15, 2001, investigatory conference with Green and Gibson, the December 18, 2001 predetermination letter, and the December 27, 2001 predetermination hearing,[24] which he waived, (see Docs. 304-3, 304-4)[25] were inadequate and insufficient to provide notice and an opportunity to be heard on the charges against him, and that the individual

---

[24]   "A pre-termination hearing need not be a mini-trial or resolve the propriety of the discharge.  Rather, it serves as "an initial check against mistaken decisions - essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action.'" McKinney v. Pate, 20 F.3d 1550, 1561 (11th Cir. 1994)(quoting Cleveland Bd. of Educ. v. Loudermill , 470 U.S. 532, 545-46 (1985)).  The Florida Career Service Employee rules  contemplate such a hearing.  (Doc. 304-2 attachment.)

[25]   In accordance with the state's predetermination procedures, as was set forth in Farley's December 18, predetermination letter, the employee is advised that he may request a predetermination conference, or choose to make no response. Fla. Admin. Code 60K-9.0042(3)(c) and 60K-9.0043(4)(2001).  (Doc. 304-2 and attachment.)

defendants' participation in that process constituted bad faith.[26]

A procedural due process violation occurs when a state fails to provide due process.   McKinney v. Pate, 20 F.3d 1550, 1557 (11th Cir. 1994). "[P]rocedural due process violations do not become complete 'unless and until the state refuses to provide due process.'"  Id. at 1562 (citation omitted).

Even assuming arguendo that the pre-termination process was procedurally inadequate because of lack of notice and insufficient evidence and opportunity to be heard, any procedural defects in the predetermination process may be remedied by an adequate post-termination hearing. See McKinney, 20 F.3d at 1563-64.  It is undisputed that the only action that Wilson took following his termination was to file charges with the EEOC and to file this lawsuit.  It is also undisputed that the state of Florida provides a process by which Wilson could have appealed his dismissal, with an opportunity for a full evidentiary hearing before the PERC, and ultimate appeal to the state judicial system.  See §§ 110.227(5)(6); 447.205(11); 447.207(8)(10); 447.504(1) Fla. Stat.   The state's post-termination process available to Wilson was adequate to satisfy the

---

[26]     Curiously, in his argument addressing whether the individual defendants sued in their personal capacities are entitled to qualify immunity, Wilson states that he "withdraws his *procedural* due process cause of action against the Department of Children and Families."  (Doc. 331-2 at 32.)  Wilson's remaining procedural due process claim is against the individual defendants.  Nevertheless, it appears Wilson himself recognizes the baselessness of this claim.

constitutional requirement of procedural due process.  See McKinney, 20 F.3d at 1563, 1564.  Not only did Wilson fail to avail himself of the state's process, but he affirmatively and knowingly withdrew from it by abandoning his complaint to PERC.  (Doc. 311-2 Wilson dep. at 66-69.)  Summary judgment is appropriate with respect to Wilson's procedural due process claim (Count IV).

### D.   Substantive Due Process (Count VI)

Wilson brings a substantive due process liberty interest claim, pursuant to 42 U.S.C. ¶ 1983, against individual defendant Farley, alleging that her malicious and bad faith false statements about him relating to his discharge were stigmatizing in nature, harming his reputation and limiting his future career opportunities.  (Doc. 142 ¶¶ 143-55.)  He seeks damages from Farley in her personal capacity.

To establish that a deprivation of a public employee's liberty interest has occurred without due process of law, the employee must prove that  a false statement of a stigmatizing nature  attending a governmental employee's discharge was made public by the governmental employer without a meaningful opportunity for employee name clearing.  Cannon v. City of West Palm Beach, 250 F.3d 1299, 1301 (11th Cir. 2001).  Any liberty interest Wilson may establish was not violated because he has received all of the process that was due to him.

In cases where a liberty interest arising from damage to reputation is implicated, the process due is that which will allow the aggrieved party to "clear his name." Harrison v. Wille, 132 F.3d 679, 683 n.9 (11th Cir. 1998).  Because the so-called name-clearing hearing "is provided simply to cleanse the reputation of the claimant, the hearing need not take place prior to his termination or to the publication of related information adverse to his interests." Campbell v. Pierce County, Ga., 741 F.2d 1342, 1345 (11th Cir. 1984); see also Harrison, 132 F.3d at 683 n.9.  During the name-clearing hearing, the employee must have the opportunity "'to support his allegations by argument however brief, and, if need be, by proof, however informal.'" Campbell, 741 F.2d at 145 (citation omitted). "Because this opportunity [for a name clearing hearing] is not as strict as the process required before one can be deprived of a property interest, due process [is] satisfied by the same opportunities provided for notice and hearing for the termination itself." Harrison, 132 F.3d at 683 n.9 (finding that pre-disciplinary conference and subsequent review board hearing provided an adequate name-clearing process).

Here, it is undisputed that Wilson was provided a pre-termination opportunity to clear his name at the December 27, 2001 predetermination conference.  He chose not to attend, but rather to respond to the charges against him in writing.  Second, the state, through PERC, and its courts,

provided an ample opportunity to Wilson to appeal his termination, and, in the context of a full evidentiary hearing, <u>see</u> § 447.205(11), to attempt to clear his name.  Defendant Farley is entitled to summary judgment on Count VI of the Complaint.[27]

### E.    Qualified Immunity (Counts I, IV, VI, VIII)

Under the doctrine of qualified immunity, "'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  <u>Evans v. Hightower</u>, 117 F.3d 1318, 1320 (11th Cir. 1997)(quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)).  Qualified immunity offers complete protection for government officials sued in their individual capacities.  <u>Vinyard v. Wilson</u>, 311 F.3d 1340, 1346 (11th Cir. 2002).  "'The purpose of this immunity is to allow government officials to carry out their discretionary duties without fear of personal liability or harassing litigation, protecting from suit all but the plainly

---

[27]    In his response  to defendants' motion for summary judgment, Wilson attempts to re-cast his Count VI substantive due process claim as one stating a violation of the 14th amendment right to equal protection.  (Doc. 331-2 at 31-34.) Wilson's argument fails for two reasons.  First, a plaintiff may not amend his complaint through argument in a brief opposing summary judgment.  <u>Gilmour v. Gates, McDonald and Co.</u>, 382 F.3d 1312, 1315 (11th Cir. 2004).  Second, a retaliation claim does not implicate the equal protection clause.  <u>Watkins</u>, 105 F.3d at 1354-55; <u>Ratcliff</u>, 62 F.3d at 340.

incompetent or one who is knowingly violating federal law.'" <u>Vinyard</u>, 311 F.3d at 1346 (citation omitted).

To receive this immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the alleged wrongful acts occurred. It is undisputed that the individual defendants were acting within the course and scope of their official duties for DCF and within the scope of their discretionary authority at all times in connection with the Wilson's dismissal. (<u>See</u> Doc. 311-6, affidavits of defendants Day, Dixon, Farley, Green, Hendricks, Lovett and Williams). Wilson's opinion that they were not does not create a genuine issue of fact on this point. (Doc. 331, Ex. 3 Wilson Aff. ¶ 6.)

Next, to overcome the defendants' assertion of qualified immunity, Wilson must demonstrate that the defendant violated clearly established law based upon objective standards. <u>Vinyard</u>, 311 F.3d at 1346; <u>Evans</u>, 117 F.3d at 1320. This second inquiry involves a two-part test. "'The threshold inquiry a court must undertake in a qualified immunity analysis is whether [the] plaintiff's allegations, if true, establish a constitutional violation.'" <u>Vinyard</u>, 311 F.3d at 1346 (quoting <u>Hope v. Pelzer</u>, 536 U.S. 730, 736 (2002)). "If a constitutional right would have been violated under the plaintiff's version of the facts, 'the next, sequential step is to ask whether the right was clearly established.'" <u>Vinyard</u>, 311 F.3d at 1346 (quoting <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001)).

As set forth in the foregoing substantive analysis of Wilson's remaining claims, Wilson has failed to carry his burden of establishing that defendants' conduct violated any constitutional or statutory right in connection with his dismissal from the position of DCF family services counselor.   "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." Saucier, 533 U.S. at 201.  "If a plaintiff has not sufficiently alleged a violation of *any* constitutional right, it is axiomatic that the plaintiff likewise has failed to allege the violation of a 'clearly established' right.'" GJR Invs., Inc. v. County of Escambia, Fla., 132 F.3d 1359, 1367 (11th Cir. 1998)(emphasis in original).[28] Thus, the Court's qualified immunity inquiry stops here, and the individual defendants are additionally entitled to summary judgment on Wilson's 42 U.S.C.

---

[28]      As underscored by the Court's disposition of Wilson's claims, the  law at all relevant times was such that defendants' had no fair warning that their conduct could be considered unconstitutional. Hope v. Pelzer, 536 U.S. 730, 741 (2002). In light of pre-existing law, the official's unlawfulness must be apparent. Moniz v. City of Ft. Lauderdale, 145 F.3d 1278, 1282 (11th Cir. 1998)(citing Anderson v. Creighton, 483 U.S. 635 , 640 (1987).  Any alleged unlawfulness of the individual defendants' actions was not apparent; they may reasonably have believed that they were disciplining an employee for what they perceived to be unacceptable, disruptive and unbecoming conduct, and insubordination.  Wilson has not created a genuine issue of fact that the individual defendants' actions violated any clearly-established law.  See e.g., Chesser v. Sparks, 248 F.3d 1117, 1124 (11th Cir. 2001); Stanley v. City of Dalton, Ga., 219 F.3d 1280, 1296 (11th Cir. 2000); Maggio v. Sipple, 211 F.3d 1346, 1355 (11th Cir. 2000); Badia, 133 F.3d at 1446; Rice-Lamar v. City of Ft. Lauderdale, 54 F. Supp.2d 1137, 1147 (S.D. Fla. 1998).

§ 1983 claims for money damages against them in their personal capacities brought in Counts I, IV, VI, and VIII of the Complaint.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, and upon due consideration, it is hereby **ORDERED:**

1.    Defendants' Motion for Summary Judgment, (Docs. 311-1, 330-1), is **GRANTED;**

2.    Plaintiff's Motion for Summary Judgment, (Doc. 294), is **DENIED;**

3.    The Clerk is directed to enter judgment in favor of all defendants and against plaintiff, and to close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 10th day of January, 2006.


_Timothy J. Corrigan_
**TIMOTHY J. CORRIGAN**
United States District Judge


j.
Copies to:
Plaintiff, <u>pro</u> <u>se</u>
Counsel of Record